The next case is number 13-3072, Branch v. Coastal State. May it please the court, Horace Brent is a veteran and had 25 years of experience with the United States Postal Service as a custodian. He was removed from his position on the basis of AWOL. Congressional policy protects federal workers so that they not suffer losses in rights or of injuries sustained in the scope of employment. Backing that up is a long string of cases from the Merit System Protection Board that state that no adverse action for AWOL can be sustained if the employee was entitled to compensation benefits as a result of injuries during the scope of his employment for the Mr. Brent was entitled to and received a Schedule Award. Schedule Award is compensation, as that term is defined by the agency's regulations. It is the compensation is defined... That was four or five years before he was AWOL, isn't that right? And he didn't produce, he didn't show with respect to his being AWOL that he was unable to work. And isn't that the point here? As a matter of fact, we believe that he did demonstrate incapacity and an inability to work. Didn't he fail to respond to a notice of being AWOL and was invited into an interview and he didn't respond? He received the notice late, was taking medication, was unable to come to that particular meeting. He later was told to come to an investigatory interview with the manager of maintenance. He did attend. He provided the manager of maintenance with all this documentation that indicated both that he was unable to work as well as his attempts to call in and request leave. The manager of maintenance disregarded all of that and initiated the action to terminate him. Compensation is not just wage loss. Compensation is also money or benefits paid to the individual for a permanent physical injury. Mr. Brent injured his hand. Still not the same as being unable to work, right? Unfortunate as it is to have a permanent hand injury, that's not the same thing as being unable to work, right? It may be both. And in fact, we would argue in this case it was. There's a report from Dr. Grant in January of 2010 in which he established a diagnosis of contracture of a joint to the right hand. That was the basis for OWCP to find that he had a permanent physical injury, had reached maximum medical improvement, he had constant pain, weakness, and stiffness. He was a custodian. You have to be ambidextrous in order to perform all of the duties that are required to be performed by a custodian. He was unable to do that. The judge ignored or didn't understand the significance of that particular report and that particular diagnosis. After the hearing, we presented evidence from the OPM that indicated that they had granted Mr. Brent's application for disability retirement, disability retirement, the inability to perform his position, along with a supplementary letter from OPM. Didn't that have certain shortcomings to it in terms of dates and details and timing? I don't believe so, Judge. The reason for that is this. There's only one document in the entire record that establishes a diagnosis for contracture of a joint of the right hand, and that's the January 10th report from Dr. Grant. Accompanying OPM's decision informing Mr. Brent that his application was granted is an explanatory letter that says, we're not granting this on the basis of risk reconstruction. We're granting your application on the basis of the diagnosis, contracture of the joint of the right hand. It necessarily relates back to the conclusion and the diagnosis of Dr. Grant as of January 10th of 2000, January of 2010. Going forward, he had reached his maximum medical improvement. He had the condition. That diagnosis is inconsistent with the ability to perform his work as a labor custodian as a result of that. Dr. Grant's evaluation and report is the foundation for not just the OWCP Award of Compensation. It's the foundation for the conclusion that Mr. Brent was also disabled and unable to work at that time. It's an abusive discretion not to reopen an initial decision from the board, provided that you meet each of three tests. The government agrees with what the test is. New evidence, they don't contest that. Due diligence, they didn't present any opposition, so it's waived. The real issue is whether it was material. We've been arguing that it is material because the administrative judge came to the conclusion that the principle of law that I started with was inapplicable to a case in which the individual is basing compensation on an impairment rating from a schedule award and not a disability rating. To begin with, there's no distinction that's drawn in the law as to what compensation is and OWCP defines compensation to include both payment for permanent physical injury as well as wage loss. There are no cases, as far as I can tell, that draw that distinction. If OPM's conclusion of disability is correct, as it is, then it goes back and establishes that since January of 2010, Mr. Grant was unable to perform the work activities involved as a custodian. He was charged with AWLL for a period beginning after Dr. Grant's diagnosis was reached, and he was entitled to compensation throughout that entire period of time. As a result of that, we believe that the decision should be A, overturned, alternatively reopened, and sent back to the agency again. So, Mr. Plotkin, what then is it about the amount of damages or compensation that you believe is owed? What should have happened is that the limitations on what Mr. Grant was able to do should have been assessed by OWCP, communicated to the Postal Service, which would then try to put him in a position for which he was qualified and was consistent with his limitations. He only filed the disability retirement as a last gasp to try to achieve some type of compensation, and he should have been reinstated going back to May of 2010 with what his physical condition was at that time. So you're looking for lost wages or partial wages for how long a period? Starting in May of 2010, continuing until he's allowed to be reinstated, re-evaluated, and put back onto a job that's appropriate, less any amount... But that's not the appeal here. Pardon me? That's not the appeal here, is it? The appeal here is from a dismissal for being AWOL. That's correct, but... This isn't a disability proceeding. No, that part is correct, but if he was improperly removed from his position, he ought to go back to be reinstated with pay offset by the amounts that he would have recovered from disability retirement over that period of time. Which we couldn't do here. That's correct. I'll reserve my time. Was that issue presented for a decision? It's the AWOL period that's before us, is that correct? That is correct. And during that AWOL period, there was... What are you requesting? We're requesting that he be reinstated with pay as of the time that he was improperly terminated. Until the disability retirement, is that right? No, that would wait another day, I think, Judge. Are you seeking an award of damages, including pay for the period during which he was retired? That's correct, subject to an offset. I mean, I think that's something that needs to be worked out with the administration once he goes back and gets reinstated. Okay. Thank you. Let's hear from the Postal Service. Ms. Vanderman? Good morning. May it please the Court? This case is essentially a simple AWOL case. The charge was absence without leave because Mr. Brent failed to comply with any of the clearly established Postal Service regulations and rules for reporting unscheduled absences. The proposal itself, on Appendix 55, goes through the various ELM provisions, Employee Labor Management provisions, that for an unscheduled absence, you must call and go through the Resource Management Computer System. If you're out more than three days, you have to produce medical documentation. At that time, if you're out for an extended time, more than 30 days, you have to produce medical documentation. None of the doctor's reports that Mr. Brent submitted after the fact said he was totally incapable of working and doing his job. Some of the doctor's reports, and it starts at Appendix 145, said he could return to work making no mention of any restrictions. One report said he can't use his fifth finger. One report said he couldn't push, pull, or lift anything more than 15 pounds, meaning that he could do those things less than 15 pounds. The Postal Service tried to accommodate him, and Mr. Brent testified that the previous fall, he had been on restroom detail. He never disputed before the Board that he was unable to work with the kind of accommodations the Postal Service was making. Mr. Owens and Davis, the supervisors, testified about that. But you're arguing that the fact that he's getting scheduled compensation for a permanent injury to his hand does not ipso facto mean that he can't work? Absolutely, Your Honor. The Schedule Award that Mr. Brent received was for permanent partial impairment. That is, his right hand was permanently impaired, not totally disabled, but impaired under the Schedule Award at a 36% rating, which is what the OWCP, Office of Workman's Comp, provided based on Dr. Grant's report. And it was partial. It wasn't full. He assumed he could work. And in fact, Mr. Brent testified at Appendix pages 484 and 85 and also 494, that starting in late May, he was trying to get back to work. And in fact, in July, after the proposal to remove, before the final decision to remove, he went back to work for several weeks. Mr. Owens testified that Mr. Brent could work even though he was partially impaired and got the Schedule Award. He never got a wage loss award. And again, the Postal Service accommodated him by either giving him restroom details, to which Mr. Brent testified, or if he needed help with something heavy, getting help. They were going out of their way to try to accommodate him in that regard. He's talking about the wage loss claim. Wage loss claim is something totally different than a Schedule Award, even though it's compensation. Workman's Comp also gives compensation for death benefits and other types of things. It doesn't necessarily mean that they're treated the same. And for... Is this an issue of first impression? If the court decides to reach the issue of the Schedule Award versus wage loss, yes. Although, in our view, an alternative independent ground for affirmance is that there's substantial evidence simply on AWOL because the board cases upon which he relies don't involve the kind of egregious violations of an agency's rules about reporting unscheduled absences. So the board's cases, which I will not claim to have read all of, don't lay down a kind of award rule that it is always the defense to removal based on AWOL that you have a certain kind of compensation award full stop. They don't go that way because nobody ever raised the Schedule Award issue. So if the court were to reach that issue, it is an issue of first impression for this court. But the court could affirm based simply on the substantial evidence AWOL charge because the Schedule Award issue was an affirmative defense that he raised. But again, none of the board cases upon which he relied deal with this kind of egregious violation of agency rules. Bottom line, he's asking for a rule that he can ignore the agency rules about reporting in every day if you have an unscheduled absence. And after the fact... Let me just... What I was trying to ask before but not very clearly, suppose this were a wage loss compensation award that he had. Would that excuse not calling in and saying, by the way, I'm not going to be here. I know you're not going to give me leave, but at least I'm reporting in? It would not excuse it, Your Honor, in this case given the Postal Service rules. The Sembrano board case is kind of helpful on that respect because if an employee came in and said, I have a wage loss claim pending, which, by the way, Mr. Brent did not because Workman's Comp had denied that in May of 2012. But if an employee came in and said, reported under the agency's rules, I have a wage loss claim pending, the Sembrano and a couple of other cases say that... Well, then the agency takes the risk that if Office of Workman's Comp later grants a person able to work for a certain period of time that would have to be supported by medical evidence, then that could excuse the AWOL charge. But all the board cases upon which he relied don't involve the kind of clear violation of the agency's rules on reporting. Because, again, what he's asking for is the rule that on day one, and this went on for several months, he doesn't report through the proper procedure. So management never knew from one day to the other whether he was coming in and they had to find somebody else to do the work. Can I ask you two questions about the relationship between the two opinions, the board opinion and the ALJ opinion? The board says, this is at 820, except as expressly modified by this final order, we affirm the initial decision issued by the administrative judge. Does that mean that the administrative judge's analysis of the distinction between the two different kind of OWCP awards is part of the governing decision? Or did that get displaced by, and this is the other half of the question, by the board's discussion of Section 8151? Your Honor, it's a really good question because sometimes when the full board says affirmed except as modified, it's not 100% clear exactly what the full board is doing. But in this case, I think a fair reading is that the AJ's reasoning is sustained in full and the full board, and this was in response to Mr. Brent's argument on the petition for review, it went into Section 8151. You only get the statutory one year right to your job because Mr. Brent was arguing as a matter of public policy, he ought to have the opportunity to keep his job. Well, in this case, he had abundant opportunity. He just sat back. And again, I would point to page 137, 38 of the appendix. In May of 2012, while all this was going on, Workman's Com denied his wage loss claim, basically saying there's no medical evidence that you're unable to work. So even under the line of cases of the MSPB cases where in some cases, if the entire period that is each and every day of AWOL, for each of those days, the employee is granted a wage loss claim, that might be excused. But Mr. Brent's case doesn't fall within that because he admits that he never called in to the ERMS system as he was supposed to do to report his unscheduled absences. He claims that he called, well, he did call in to an automated phone number system to ask for Family Medical Leave Act, which as the testimony and documents established, go a different route. There's a FMLA, Family Medical Leave Act coordinator that deals with those kinds of issues. And clearly he was told that he was not eligible. He didn't have the 1,250 hours of work to make him eligible for that, and similarly without pay. But he never called in, and he doesn't dispute this, through the required procedure, the ERMS procedure, every day to report an unscheduled absence. And if he had done that, then his supervisors would get an automatic form that Mr. Brent's not coming to work. Mr. Hanneman, what is the effect of the 2011 approval of his application for disability retirement on the AWOL? Your Honor, the board correctly decided that was not material because that OPM letter did not say anything about the effective date of his disability retirement or whether it would be retroactive to cover the AWOL period. Nobody knows what happened between August of 2010 when he was removed and June of 2011 when OPM said he was eligible for disability retirement. Nobody knows what any of the medical circumstances were during that time. He could have submitted to the full board, along with that OPM letter, whatever it was he had submitted to OPM, but he didn't do so. So all we have on this record is the doctor's report starting at page 145 of the appendix covering the time of his AWOL period. None of them say he was totally incapacitated for duty, for work. And he admits that he was able to work in part, and he went back to work in July for a couple weeks after the proposal to remove, which was in June, until the effective date of his removal. So this whole issue about the wage loss or schedule award really, as we stated in our brief, the schedule award is really irrelevant because there was no evidence that he submitted either to his managers at the Postal Service or to OPM that he was unable to work from early March through June 11, which was the proposal to remove. And he did not respond to the five-day notice that management gave him, basically come in and give us whatever medical documentation you have. It was not until his meeting with Mr. McGee, the deciding official, after the proposal to remove was issued that Mr. Brent came in and told Mr. McGee, well, I have this schedule award. One, it's irrelevant here. And two, under the ELM, as was set out in the proposal, there are very clear requirements about what an employee must do. It's his job to show up for work or go through the proper procedures to tell his managers that he will not be working, and he didn't do any of that. So I believe I've covered the basis that we intended. The Court has no further questions. Okay. No. Thank you. Thank you for joining. Mr. Flatkin, you have some time. First of all, there isn't any evidence in the record that Mr. Brent filed a wage loss claim that was denied by OWCP. Mr. Brent started to receive a schedule award, payments pursuant to the schedule award. He then asked OWCP to change his status of the claim to a wage loss claim. They refused to allow him to do that because he had already begun to receive periodic compensation pursuant to the schedule award, and they have a policy that basically says once you've elected to go ahead and get a schedule award, you can't convert that into a wage loss claim. And federal law prohibits individuals from obtaining compensation for a schedule award at the same time also collecting compensation as a wage loss. So he had to choose one or the other. He started out with the schedule award and later decided that he wanted to change his mind, and OWCP prevented him from doing that. Secondly, there is no other case that we've come across that draws the distinction that the government would have you make here that the MSPB rule against dismissing employees on the basis of AWOL only applies if you have a wage loss claim. That simply doesn't exist. And on that basis alone, we think that the decision could be reversed. The government's argument about whether he called in, the basis for the notice of proposed removal was his supervisor said he had not called in, he had not submitted documentation. The testimony that came out at the hearing was the opposite of that. They acknowledged that he called in. They acknowledged that he called in to the tour offices, that he spoke to each of his supervisors at different times, that he had left messages in the tour office for other supervisors to notify his supervisors that he was unable to work and had requested leave. He called in to the ERMS number, which is the 877 number, and during that he got transferred on to elect FMLA, which was a request for leave without pay. That was documented. All of those documented calls were sent by email, as well as a copy of the form was received by the supervisors, and they acknowledged getting those forms, which indicated that Mr. Brent had called in and requested leave. The other part of their statement was he failed to submit documentation. Yet on cross-examination, each of the supervisors testified they had received Dr. Grant's report, they had received other medical documentation, and in the course of the hearing, the administrative judge asked one of the witnesses, is this appropriate documentation? And the witnesses said yes, and as a result of that, a substantial amount of time that was alleged to have been AWOL was rescinded. So under the circumstances, the entire basis for the administrative decision to remove him was undercut by the testimony of the individuals who were his supervisors. Thank you very much. Thank you. Thank you both. The case is taken under submission. That concludes the argued cases for this morning. All rise.